MASSOUD & PASHKOFF, LLP
Attorneys for Plaintiff
950 Third Avenue, Suite 901
New York, New York 10022
(212) 257-1816

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------x

QUIMERA HOLDING GROUP, S.A.C.,

Plaintiff,

-against-

KENNEDY FUNDING FINANCIAL, LLC,
KEVIN WOLFER, and GREGG WOLFER,

Defendants.

-------------------------------------------------------x

Case No.:

Civil Action

**COMPLAINT**

Plaintiff, complaining of the defendants by its undersigned attorneys, states and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, Quimera Holding Group, S.A.C., brings this action against defendant Kennedy Funding Financial, LLC and its principals, defendants Kevin Wolfer and Gregg Wolfer, asserting claims for negligent misrepresentation, breach of contract, unjust enrichment (pled in the alternative), breach of the covenant of good faith and fair dealing, and violations of the New Jersey Consumer Fraud Act, all arising from defendants' deceptive and unethical lending practices.

Page 1 of 26

## PARTIES TO THE ACTION

2. Plaintiff Quimera Holding Group, S.A.C. is a foreign corporation organized under the laws of Peru, in good standing, and is engaged in the business of real estate development

3. Defendant Kennedy Funding Financial, LLC ("Kennedy Funding") is a New Jersey limited liability company with a place of business at 930 Sylvan Avenue, Englewood Cliffs, New Jersey.

4. Defendant Kevin Wolfer is a natural person and citizen of the State of New Jersey and, at all times herein mentioned, was, and presently is, Chief Executive Officer and a principal of defendant Kennedy Funding.

5. Defendant Gregg Wolfer is a natural person and citizen of the State of New Jersey and, at all times herein mentioned, was, and presently is, Chief Operating Officer and a principal of defendant Kennedy Funding.

6. At all relevant times herein mentioned, defendants Kevin Wolfer and Gregg Wolfer were, and presently are, the legal, equitable and beneficial owners of defendant Kennedy Funding, and controlled and dominated defendant Kennedy Funding, whose website proclaims that they are "involved in all aspects of Kennedy Funding's business," and the "marketing of the company and day-to-day transactions."

## JURISDICTION

7. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(2), in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between plaintiff, a citizen of the Republic of Peru, and the defendants, all of whom are citizens of the State of New Jersey.

## VENUE

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that the defendants reside in this judicial district and a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## RELEVANT FACTS COMMON TO ALL COUNTS

9.      On or about July 6, 2017, plaintiff engaged the services of non-party South Pacific Funds and Commerce Limited ("South Pacific"), a Bahamas entity, to identify and procure sources of bridge loan financing for plaintiff's real estate development projects in Peru.

10.     On or about October 6, 2017, South Pacific submitted to plaintiff a written proposal identifying a potential source of financing from defendant Kennedy Funding (the "Kennedy Funding Proposal"), setting forth proposed loan criteria and providing for bridge loan financing in an amount from $20,000,000.00 to $120,000,000.00, with a minimum loan amount of $5,000,000.00, to be secured by collateral in the form of real property or acceptable equivalent.

11.     Based upon the contents of the Kennedy Funding Proposal, and in reliance thereon, plaintiff elected to proceed with financing through defendant Kennedy Funding.

12.     On November 1, 2017, plaintiff's principals, Juan Carlos Cordova Del Carpio and Jose Enrique Mendoza Del Solar, met with defendant Kennedy Funding and its principals, Kevin Wolfer and Gregg Wolfer, at defendants' office in Englewood Cliffs, New Jersey, to review and finalize the terms upon which defendant Kennedy Funding would provide plaintiff with financing.

13.     At the aforesaid meeting, defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer presented plaintiff's principals with a loan commitment setting forth the terms upon which Kennedy Funding would provide plaintiff with financing (the "Loan Commitment").

14. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that Kennedy Funding would provide plaintiff with financing in a maximum loan amount of Fifty Million Dollars ($50,000,000.00) (the "Maximum Loan") and a minimum loan amount of Three Million Dollars ($3,000,000.00) (the "Minimum Loan").

15. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that the basis for the loan would be the "as is" market value of any proposed real estate pledged as collateral by plaintiff in its present condition.

16. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that the "as is" market value of the proposed collateral was based on a twelve (12) month sale of the collateral to a cash buyer (the "Disposition Value").

17. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented plaintiff's principals that, upon making a determination of the proposed collateral's Disposition Value, Kennedy Funding would deliver to plaintiff a loan offer equal to Fifty Five Percent (55%) of its Disposition Value, not to exceed the amount of $50,000,000.00 (the "Loan Offer").

18. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that plaintiff was required to pay certain fees associated with the proposed transaction, some of which were due prior to closing, while others were due at the time of closing.

19. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that certain fees to be paid by plaintiff in connection with the proposed transaction were fixed in amount, while others, which were set forth on a **SCHEDULE "A"** to the Loan Commitment, were estimated on the basis of the Maximum Loan amount of $50,000,000.00, and were subject to change depending on the amount of the loan actually made.

20. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that, at the time of closing, there would be paid from the loan proceeds to Kennedy Funding a fee equal to Two Percent (2%) of the Loan Offer accepted by plaintiff, estimated, on the basis of a Maximum Loan of $50,000,000.00, to be in the amount of $1,000,000.00 .

21. At the aforesaid meeting, Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that, at the time of closing, there would be paid from the loan proceeds to South Pacific a commission fee equal to Five Percent (5%) of the Loan Offer accepted by plaintiff, estimated, on the basis of a Maximum Loan of $50,000,000.00, to be in the amount of $2,500,000.00.

22. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that plaintiff was obligated to pay the sum $15,000.00 for legal fees incurred by Kennedy Funding, which was due at the time of signing of the Loan Commitment.

23. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that plaintiff was obligated to pay to Kennedy Funding fees associated with issuance of the Loan Commitment, designated as a Letter of Interest Fee and a Commitment Fee, amounting to $2,500,000.00, estimated as Five Percent (5%) of a Maximum Loan of $50,000,000.00.

24. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals the Letter of Interest fee, in the amount of $15,000.00 for the preparation of the Loan Commitment, was due at the time of signing of the Loan Commitment.

25. At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that plaintiff was obligated to pay $500,000.00 of the Commitment Fee prior to the closing, with the remaining amount of $1,985,000.00, as set forth on **SCHEDULE "A"** of estimated fees based on a Maximum Loan of $50,000,000.00, due at the time of closing.

26.     At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that Kennedy Funding would refund the paid portion of the Commitment Fee in the event Kennedy Funding was unable to perform its obligations.

27.     At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that plaintiff was obligated to pay Kennedy Funding the costs of appraisal of the proposed collateral, which sum was indeterminate at the time.

28.     At the aforesaid meeting, defendants Kevin Wolfer and Gregg Wolfer represented to plaintiff's principals that plaintiff was obligated to pay additional unidentified closing costs of the transaction, which sum was unknown at the time.

29.     At the aforesaid meeting, based on the afore-described representations of defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer, and in reliance thereon, plaintiff accepted the terms of, and executed, the proposed Loan Commitment.

30.     Annexed hereto as Exhibit "A" is a true copy of the Loan Commitment as executed by plaintiff and defendants, the contents of which are adopted and incorporated in their entirety as if more fully set forth herein at length.

31.     On November 1, 2017, plaintiff paid $15,000.00 to Kennedy Funding as a Letter of Interest fee for preparing the Loan Commitment and related documents, which defendant Kennedy Funding accepted and retained.

32.     On November 1, 2017, plaintiff paid $15,000.00 to Kennedy Funding for legal fees and costs, which defendant Kennedy Funding accepted and retained.

33.     On or about November 12, 2017, plaintiff designated the following properties for appraisal as prospective collateral for a proposed loan from defendant Kennedy Funding: (a) City

Center, a two tower, 24-floor office building in Arequipa, Peru; (b) Quinta Palermo, consisting of land zoned for residential development in Arequipa, Peru; (c) Vallecito, consisting of land subdivided into two lots, in Arequipa, Peru; (d) La Republica, a newly-built vacant industrial park in Arequipa, Peru; (e) Villa El Sol De Yarabamba, consisting of raw land zoned for residential high density in Arequipa, Peru; (f) Jose Luis Bustamante Y Rivero, a residential development in Peru; (g) Fernandini, consisting of land zoned for commercial use; (h) Jardines Del Palacio, consisting of land in a historic district in El Palacio Urb, Peru; (i) Palacio Goyeneche, consisting of land in a historic district in El Palacio Urb, Peru; and (j) Aceros Arequipa, a light industrial park consisting of two main warehouses and three office buildings in Arequipa, Peru (the "Proposed Collateral").

34.    At no time did defendants, or any one of them, ever object to any of the properties which plaintiff designated as Proposed Collateral for a loan from Kennedy Funding.

35.    On or about November 23, 2017, plaintiff paid an initial $200,000.00 portion of the Commitment Fee to defendant Kennedy Funding, which defendant accepted and retained.

36.    In or about December 2017, plaintiff paid the second $300,000.00 installment of the Commitment Fee to defendant Kennedy Funding, which defendant accepted and retained.

37.    In or about December 2017, plaintiff paid an $85,000.00 appraisal fee to defendant Kennedy Funding, which defendant accepted and retained.

38.    Defendant Kennedy Funding designated CBRE Chile as its appraiser to perform a valuation of the Proposed Collateral.

39.    On January 23, 2018, following CBRE Chile's appraisal of the Proposed Collateral, defendant Kennedy Funding provided plaintiff with a loan offer in the amount of $32,600,000.00, which was to be secured by the Proposed Collateral.

40. By way of email sent on January 23, 2018, plaintiff requested that defendant Kennedy Funding provide it with the appraisal reports of the Proposed Collateral prepared by CBRE Chile.

41. On January 23, 2018, defendants provided plaintiff with the appraisals prepared by CBRE Chile for each of the properties comprising the Proposed Collateral (the "Valuation Reports").

42. By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the City Center property to be $54,743,554.00, which it then discounted by 50% to arrive at a disposition value of $27,371,777.00.

43. By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Quinta Palermo property to be $6,127,184.78, which it then discounted by 30% to arrive at a disposition value of $4,289,029.00.

44. By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Vallecito property to be $9,396,761.00, which it then discounted by 30% to arrive at a disposition value of $6,577,733.00.

45. By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the La Republica property to be $4,886,321.00, which it then discounted by 50% to arrive at a disposition value of $2,443,161.00.

46. By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Villa El Sol De Yarabamba property to be $621,638.00, which it discounted by 50% to arrive at a disposition value of $310,819.00.

47. By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Jose Luis Bustamante Y Rivero property to be $3,209,525.00, which it then discounted by 30% to arrive at a disposition value of $2,246,668.00.

48.    By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Fernandini property to be $994,000.00, which it then discounted by 30% to arrive at a disposition value of $696,093.00.

49.    By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Jardines Del Palacio property to be $11,566,540.00, which it then discounted by 50% to arrive at a disposition value of $5,783,270.00.

50.    By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Palacio Goyeneche property to be $3,542,211.00, which it then discounted by 50% to arrive at a disposition value of $1,771,106.00.

51.    By way of a Valuation Report dated January 18, 2018, CBRE Chile determined the market value of the Aceros Arequipa property to be $15,433,012.00, which it then discounted by 50% to arrive at a disposition value of $7,716,506.00.

52.    None of the Valuation Reports prepared by CBRE Chile provided or set forth any reason or explanation as to why discount rates of 30% and 50% of the fair market values of the real properties offered as Proposed Collateral were used to arrive at their purported disposition values.

53.    CBRE Chile based its appraisal of the market value of the Jose Luis Bustamante Y Rivero property on a purported land area of 3,437.01 square meters when the actual land area of such property is 6,983.72 square meters, or more than twice that utilized by CBRE Chile to arrive at its determination of the market value of such property.

54.    By way of email sent on January 29, 2018 to defendant Kennedy Funding, plaintiff objected to the Valuation Reports and sought a revision thereof on the grounds, among others, that CBRE Chile's market value determinations: were inconsistent with comparable property values; did

not account for differences between finished projects and those under construction; were based on the use of discount rates of 30% - 50% to calculate disposition values of the Proposed Collateral, when the accepted industry standard was to apply discount rates of 15% - 20% to market values; and were wildly divergent from values previously determined by independent third party financial institution lenders which plaintiff had previously provided to defendants.

55.     By way of email sent on February 2, 2018, defendant Kennedy Funding, by Kevin Wolfer, informed plaintiff's principal, Enrique Mendoza, as follows:

> "As per our conversation just now, we look forward to receiving an email from you by Monday either advising that you would like to engage the services of a third party appraiser pursuant to the Loan Commitment or requesting that we consider removing certain properties from the Collateral and adjusting the Loan Offer accordingly."

56.     In response to defendants' afore-described email of February 2, 2018, plaintiff, by way of email sent on February 6, 2018, informed Kevin Wolfer it wished to remove the Yarabamba, Republica, El Palcio de Goyeneche, Fernandini and Aceros Arequipa properties from the collateral.

57.     By reason of plaintiff's decision to remove the afore-described properties from the collateral, the proposed loan by defendant Kennedy Funding was to be secured by the City Center, Quinta Palermo, Vallecito, Jose Luis Bustamante Y Rivero, and Jardines del Palacio properties only (the "Designated Collateral").

58.     By way of an email sent on February 9, 2018, Kevin Wolfer responded by informing plaintiff that defendant Kennedy Funding would extend to plaintiff a Twenty Three Million Dollars ($23,000,000.00) loan, to be secured by the Designated Collateral (the "Loan Offer").

59.    According to the Valuation Reports prepared by defendant Kennedy Funding's own designated appraiser, CBRE Chile, the collective disposition value of the Designated Collateral was $46,268,477.00, notwithstanding CBRE Chile's use of less than 50% of the land area of the Jose Luis Bustamante Y Rivero property to calculate its market value.

60.    The loan offer of $23,000,000.00 made by defendant Kennedy Funding was equal to less than 50% of the disposition value of the Designated Collateral as calculated by its designated appraiser, CBRE Chile.

61.    According to the terms and conditions of the Loan Commitment, a loan offer equal to 55% of the Designated Collateral should have been at least $25,447,662.00, notwithstanding CBRE Chile's use of less than 50% of the land area of the Jose Luis Bustamante Y Rivero property to calculate its market value.

62.    By way of email sent February 12, 2018, plaintiff, by Juan Carlos Cordova, informed Kevin Wolfer that, based on the disposition values calculated by CBRE Chile, a loan secured by the Designated Collateral should be more than $23,000,000.00, and requested that it be increased.

63.    By way of email sent on February 12, 2020, defendant Kennedy Funding, by Kevin Wolfer, informed plaintiff's principal, Enrique Mendoza, in relevant part, as follows:

> "... the value of the 5 properties you are now offering as Collateral, as determined by CBRE, total $46,268,477. In the event we were willing to offer a Loan based on 55% of said value, the revised Loan Offer would be $25,447,662, not $33,500,000 as per your request below. However, given the fact that we are permitting you to choose the 5 properties to include as Collateral, and given the fact that 4 of the 5 properties comprising the proposed revised Collateral you are offering are just land, we will only offer $23,000,000."

64.     Nowhere in the Loan Commitment did Kennedy Funding specify, nor did the parties ever agree, additional discounts would apply if the collateral consisted of unimproved land only.

65.     By way of email sent on February 14, 2018, plaintiff requested Kennedy Funding to downwardly adjust the amount of the Commitment Fee in accordance with its loan offer of only Twenty Three Million Dollars ($23,000,000.00).

66.     By way of an email response sent on February 14, 2018, Kevin Wolfer refused to reduce the Commitment Fee, insisting it was a fixed sum irrespective of the loan amount.

67.     Kennedy Funding failed and refused to provide plaintiff with a loan offer equal to 55% of the disposition value of the Designated Collateral as determined by CBRE Chile.

68.     At no time did defendant Kennedy Funding ever fund or close a loan with plaintiff in any amount.

69.     Despite due demand therefor, Kennedy Funding refused to return any part of the fees paid to it by plaintiff, including but not limited to the Commitment Fee.

## COUNT I
### (Fraud)

70.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "69" herein-above with the same full force and effect as if same had been more fully set forth herein at length.

71.     Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representation that Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the collateral was false when made because defendants intended at all times to apply additional discounts in the event the collateral consisted of unimproved land.

72.    Kennedy Funding, Kevin Wolfer and Gregg Wolfer knew their representation that Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the collateral was false when made because defendants intended at all times to apply additional discounts in the event any of the collateral consisted of unimproved land.

73.    Kennedy Funding, Kevin Wolfer and Gregg Wolfer intended for plaintiff to rely on their afore-described representation notwithstanding their undisclosed intention to apply additional discounts in the event the collateral consisted of unimproved land.

74.    Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's intention to apply additional undisclosed discounts to the disposition value of the proposed collateral in the event any of the collateral consisted of unimproved land was a material term that should have been disclosed to plaintiff in that the loan offer made by Kennedy Funding after applying additional discounts to the Designated Collateral was less than the represented 55% of the disposition value of such collateral.

75.    Defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer had an obligation to disclose to plaintiff their intentions to apply further discounts to the disposition value of the proposed collateral in the event that any of it consisted of unimproved land only.

76.    Defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer failed to disclose their intention to further discount the disposition value of the proposed collateral in the event any of it consisted of unimproved land.

77.    Plaintiff reasonably relied on defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the collateral.

78.    Had plaintiff been aware of defendants' intention to apply additional undisclosed discounts to the disposition value of the proposed collateral in the event that any of it consisted of unimproved land, it would never have accepted the Loan Commitment.

79.    Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representation the Commitment Fee of $2,485,000.00 was based on an anticipated loan offer of $50,000,000.00 was false when made because, at all relevant times herein mentioned, they intended to charge such fee irrespective of the amount of the loan which Kennedy Funding would make to plaintiff.

80.    Kennedy Funding, Kevin Wolfer and Gregg Wolfer knew their representation that the Commitment Fee of $2,485,000.00 was based on an anticipated loan offer of $50,000,000.00 was false when made because, at all relevant times herein mentioned, they intended to charge such fee irrespective of the amount of the loan which Kennedy Funding would make to plaintiff.

81.    Defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer intended for plaintiff to rely on their representations the Commitment Fee of $2,485,000.00 was based on an anticipated loan offer of $50,000,000.00.

82.    Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's' intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan offer made to plaintiff was a material term they should have disclosed to plaintiff because, while such fee amounted to only 5% of a potential maximum loan of $50,000,000.00, it amounted to 11% of the $23,000,000.00 actual Loan Offer made by Kennedy Funding, and potentially amounted to 83% of the $3,000,000.00 minimum loan offer allowed under the Loan Commitment.

83.    Kennedy Funding, Kevin Wolfer and Gregg Wolfer should have disclosed their intention to charge a $2,485,000.00 Commitment Fee irrespective of the actual amount of a loan.

84.     Defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer failed to disclose their intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan which Kennedy Funding would make to plaintiff.

85.     Plaintiff reasonably relied on defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that the $2,485,000.00 Commitment Fee was based on an anticipated maximum loan of $50,000,000.00.

86.     Had plaintiff been aware of defendants' intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan which Kennedy Funding would make to plaintiff, it would never have accepted the Loan Commitment.

87.     By reason of the foregoing, plaintiff suffered and sustained damages in the amount of $615,000.00, consisting of $500,000.00 paid to Kennedy Funding as a Commitment Fee, the sum of $15,000.00 paid to Kennedy Funding as a Letter of Interest Fee, the sum of $15,000.00 paid to Kennedy Funding as legal fees and costs, and $85,000.00 paid to Kennedy Funding as appraisal fees.

WHEREFORE, plaintiff prays for judgment against each of defendants Kennedy Funding Financial LLC, Kevin Wolfer, and Gregg Wolfer, in the amount of $615,000.00, together with pre-judgment interest thereon and costs of suit.

## COUNT II
### (Negligent Misrepresentation)

88.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "87" herein-above with the same full force and effect as if same had been more fully set forth herein at length.

89.     Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the collateral was incorrect and negligently made because defendants intended to apply additional discounts in the event any of the collateral consisted of unimproved land.

90.     Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's intention to apply additional discounts to the disposition value of the proposed collateral in the event any of the collateral consisted of unimproved land was a material term in that the loan offer made by Kennedy Funding to plaintiff after applying additional discounts to the Designated Collateral was less than the represented and agreed-to 55% of the disposition value of such collateral.

91.     Plaintiff reasonably relied on defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the collateral.

92.     Had plaintiff been aware of defendants' intention to apply additional undisclosed discounts to the disposition value of the proposed collateral in the event it consisted of unimproved land, and the effect it would have upon the amount of the loan offered, it would never have accepted the Loan Commitment.

93.     Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that the Commitment Fee of $2,485,000.00 was based on an anticipated loan of $50,000,000.00 was incorrect and negligently made because defendants intended to charge such fee irrespective of the amount of the loan which Kennedy Funding would make to plaintiff.

94.     Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's' intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan offer made

to plaintiff is a material term because, while such fee amounted to 5% of a potential maximum loan of $50,000,000.00, it amounted to 11% of the $23,000,000.00 actual Loan Offer made by Kennedy Funding, and potentially amounted to 83% of the $3,000,000.00 minimum loan offer allowed under the Loan Commitment.

95.    Plaintiff reasonably relied on defendants' representations that the Commitment Fee of $2,485,000.00 was based on an anticipated loan of $50,000,000.00.

96.    Had plaintiff been aware of defendants' intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan which Kennedy Funding would make to plaintiff, it would never have accepted the Loan Commitment.

97.    By reason of the foregoing, plaintiff suffered and sustained damages in the amount of $615,000.00, consisting of $500,000.00 paid to Kennedy Funding as a Commitment Fee, the sum of $15,000.00 paid to Kennedy Funding as a Letter of Interest Fee, the sum of $15,000.00 paid to Kennedy Funding as legal fees and costs, and $85,000.00 paid to Kennedy Funding as appraisal fees.

WHEREFORE, plaintiff prays for judgment against each of defendants Kennedy Funding Financial LLC, Kevin Wolfer, and Gregg Wolfer, in the amount of $615,000.00, together with pre-judgment interest thereon and costs of suit.

## <u>COUNT III</u>
### (Breach of Contract)

98.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "97" herein-above with the same full force and effect as if same had been more fully set forth herein at length.

99.    The Loan Commitment constitutes a valid and binding contract between plaintiff and defendant Kennedy Funding.

100.    Pursuant to the terms and conditions of the Loan Commitment, defendant Kennedy Funding undertook, and was obligated, to provide plaintiff with secured funding in the form of a loan equal to Fifty-Five Percent (55%) of the "as is" market value, or the disposition value, of the real properties designated by plaintiff as collateral for such loan, up to a maximum loan amount of $50,000,000.00.

101.    The collective disposition value of the Designated Collateral, consisting of the real properties identified as City Center, Quinta Palermo, Vallecito, Jose Luis Bustamante Y Rivero, and Jardines del Palacio, was $46,268,477.00.

102.    Pursuant to the terms and conditions of the Loan Commitment, defendant Kennedy Funding was bound and obligated to provide plaintiff with a loan offer of $25,447,662.00 based on a calculation of 55% of the disposition value of the Designated Collateral.

103.    Defendant Kennedy Funding breached the express terms of the Loan Commitment by refusing to provide plaintiff with a loan of $25,447,662.00 secured by the Designated Collateral.

104.    Plaintiff fully performed all of its obligations under the Loan Commitment, having paid to defendant Kennedy Funding $615,000.00 in Commitment Fees, Letter of Interest Fee, legal costs, and appraisal fees, all of which defendant Kennedy Funding accepted and retained.

105.    At no time did defendant Kennedy Funding ever return any part of the fees paid to it by plaintiff, despite due demand therefor.

106.    As a direct and proximate result of defendant Kennedy Funding's breach of the Loan Commitment, plaintiff has suffered and sustained damages in the amount of $615,000.00.

WHEREFORE, plaintiff prays for judgment against defendant Kennedy Funding Financial LLC in the amount of $615,000.00, together with pre-judgment interest thereon and costs of suit.

## COUNT IV – PLED IN THE ALTERNATIVE
### (Unjust Enrichment)

107.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "106" herein-above with the same full force and effect as if same had been more fully set forth herein at length.

108.    Plaintiff paid to Kennedy Funding $615,000.00 in fees with the justified expectation that Kennedy Funding would provide it with a loan offer equal to 55% of the disposition value of the Designated Collateral.

109.    Defendant Kennedy Funding accepted and retained the $615,000.00 in fees paid to it by plaintiff.

110.    Defendant Kennedy Funding never made a loan to plaintiff in an amount equal to 55% of the disposition value of the Designated Collateral, or in any amount.

111.    By reason of the foregoing, it is unfair, inequitable and unconscionable for Kennedy Funding to retain the $615,000.00 in fees paid to it by plaintiff.

112.    By reason of the foregoing, defendant Kennedy Funding was unjustly enriched at the expense of plaintiff in the amount of $615,000.00.

113.    By reason of the foregoing, plaintiff has suffered and sustained damages in the amount of $615,000.00.

WHEREFORE, plaintiff prays for judgment against defendant Kennedy Funding Financial LLC in the amount of $615,000.00, together with pre-judgment interest thereon and costs of suit.

## COUNT V
### (Breach of the Covenant of Good Faith and Fair Dealing)

114.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "113" herein-above with the same full force and effect as if same had been more fully set forth herein at length.

115.    The Loan Commitment provided that defendant Kennedy Funding "intends to form a limited liability company just prior to closing comprised of its private funding sources to fund and act as Lender for the Loan ("Loan") described [thereunder]."

116.    The Loan Commitment provided that the closing of the loan shall take place no later than February 15, 2018, time of the essence.

117.    The Loan Commitment provided that, in the event plaintiff required additional time to close, it may extend the expiration date of the Loan Commitment until March 15, 2018, upon written notice and payment of $500,000.00 (the "Extension Fee") no later than February 15, 2018.

118.    The Loan Commitment provided that defendant Kennedy Funding's commitment to provide a loan was subject to the negotiation, execution and delivery of definitive loan documents, defined thereunder, which were to be in form, substance and enforceability satisfactory to Kennedy Funding in its sole discretion (the "Loan Documents").

119.    The Loan Commitment provided that plaintiff must satisfy the conditions set forth in the Loan Documents at least three (3) business days prior to the closing and funding of the loan.

120.    Defendant Kennedy Funding failed, refused and neglected to provide plaintiff with a loan offer equal to 55% of the disposition value of the Designated Collateral by the designated closing date of February 15, 2018, or at any time thereafter.

121.   Defendant Kennedy Funding failed to form a limited liability company comprised of its private funding sources to fund and act as lender for a loan to plaintiff by the designated closing date of February 15, 2018, or at any time thereafter.

122.   Defendant Kennedy Funding failed to prepare, execute or deliver any of the required Loan Documents by the designated closing date of February 15, 2018, or at any time thereafter.

123.   Defendant Kennedy Funding failed to ever advise plaintiff what conditions, if any, set forth in the Loan Documents must be satisfied at least 3 business days prior to the designated closing date of February 15, 2018.

124.   By reason of the foregoing, a closing could not take place by the designated closing date of February 15, 2018, or at any time thereafter.

125.   Based on the foregoing, on February 14, 2018, plaintiff requested that defendant Kennedy Funding extend the expiration date of the Loan Commitment and waive the Extension Fee as defendant was not ready to close a loan by the designated date of February 15, 2018.

126.   In response to plaintiff's afore-described request, on February 14, 2018, defendant Kennedy Funding informed plaintiff it would extend the expiration date of the Loan Commitment only on the condition that plaintiff paid an extension Fee of $350,000.00 by February 16, 2018.

127.   By way of an email sent on February 15, 2018, plaintiff informed defendant Kennedy Funding that, inasmuch as Kennedy Funding was not ready to close a loan by February 15, 2018, the expiration date of the Loan Commitment should be extended at no cost to plaintiff.

128.   Defendant Kennedy Funding refused to waive the Extension Fee and, on March 1, 2018, informed plaintiff that the Loan Commitment had expired and plaintiff was not entitled to any refund of the paid portion of the Commitment Fee.

129.    Defendant Kennedy Funding's afore-described actions were inequitable and in bad faith in that the delay in closing a loan was caused and occasioned solely by defendant Kennedy Funding's own failure to meet its obligations under the terms of the Loan Commitment.

130.    Defendant Kennedy Funding's afore-described actions denied plaintiff the benefit of the bargain originally intended by the parties.

131.    Kennedy Funding's afore-described actions constitute a breach of the  implied covenant of good faith and fair dealing.

132.    By reason of the foregoing, plaintiff has suffered and sustained damages in the amount of $615,000.00 paid to and retained by defendant Kennedy Funding.

WHEREFORE, plaintiff prays for judgment against defendant Kennedy Funding Financial LLC in the amount of $615,000.00, together with pre-judgment interest thereon and costs of suit.

## COUNT VI
### (Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*)

133.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "132" herein-above with the same full force and effect as if same had been more fully set forth herein at length.

134.    At all relevant times herein mentioned, defendant Kennedy Funding was, and presently is, subject to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "CFA"), in that it was, and presently is, a limited liability company involved in the sale of merchandise to the general public as those terms are defined by under the CFA, and more particularly the business of extending loans and providing financing.

135.    At all relevant times herein mentioned, defendant Kevin Wolfer was, and presently is, subject to the CFA in that he was, and presently is, an officer, member and owner of defendant Kennedy Funding, a business entity involved in the sale of merchandise to the general public, and more particularly the business of extending loans and providing financing.

136.    At all relevant times herein mentioned, defendant Gregg Wolfer was, and presently is, subject to the CFA in that he was, and presently is, an officer, member and owner of defendant Kennedy Funding, a business entity involved in the sale of merchandise to the general public, and more particularly the business of extending loans and providing financing.

137.    At all relevant times herein mentioned, defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer advertised the sale of their services to the general public by means of direct and indirect solicitation, including but not limited to promoting themselves on their public website as "America's most trusted bridge loan lender;" claiming to be "the leaders in fast, flexible funding since 1985;" and, claiming their "can close in as little as 5 days for loans from $1 million to over $50 million with a loan to value ration of up to 75%."

138.    At all relevant times herein mentioned, plaintiff was, and presently is, a consumer within the meaning of the CFA and a member of the class protected thereby in that it contracted for services and merchandise offered and sold by defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer to the public at large, and more particularly a loan and financing.

139.    Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations, as set forth in the Loan Commitment, that defendant Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the collateral which was to serve as security for such loan was false when made because said defendants at all times intended to apply additional

discounts in the event any of the collateral consisted of unimproved land, thereby decreasing the actual amount being offered as a loan.

140. Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's intention to apply additional discounts to the disposition value of the proposed collateral in the event any of the collateral consisted of unimproved land was a material term that should have been disclosed to plaintiff in that the loan offer ultimately made by defendant Kennedy Funding to plaintiff after applying additional discounts to the Designated Collateral was less than the represented 55% of the disposition value of such collateral.

141. Defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer failed to disclose to plaintiff their intention to apply additional discounts to the disposition value of the proposed collateral in the event any of the collateral consisted of unimproved land.

142. Plaintiff reasonably relied on defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that defendant Kennedy Funding would deliver to plaintiff a loan offer equal to 55% of the disposition value of the Designated Collateral.

143. Had plaintiff been aware of defendants' intention to apply additional undisclosed discounts to the disposition value of the proposed collateral in the event it consisted of unimproved land, and the actual effect it would have on the amount which defendants intended to offer as a loan, it would never have accepted the Loan Commitment.

144. Defendant Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's afore-described conduct constituted the use or employment of unconscionable commercial practices, fraud, false promise, misrepresentation, and the knowing concealment, suppression, and omission of a material fact with the intent that plaintiff rely thereon, all in violation of N.J.S.A. § 56:8-2.

Page 24 of 26

145.    Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's representations that the Commitment Fee of $2,485,000.00 was based on an anticipated loan of $50,000,000.00 was false when made because defendants intended at all times to charge such fee irrespective of the amount of the loan which Kennedy Funding would make to plaintiff.

146.    Defendants Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's' intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan offer made to plaintiff is a material term because, while such fee amounted to 5% of a potential maximum loan of $50,000,000.00, it amounted to 11% of the $23,000,000.00 actual Loan Offer made by Kennedy Funding, and potentially amounted to 83% of the $3,000,000.00 minimum loan offer allowed under the Loan Commitment.

147.    Defendants Kennedy Funding, Kevin Wolfer and Gregg Wolfer failed to disclose to plaintiff their intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan offer made to plaintiff.

148.    Plaintiff reasonably relied on defendants' representations that the Commitment Fee of $2,485,000.00 was based on an anticipated loan of $50,000,000.00.

149.    Had plaintiff been aware of defendants' intention to charge a Commitment Fee of $2,485,000.00 irrespective of the actual amount of the loan which Kennedy Funding would make to plaintiff, it would never have accepted the Loan Commitment.

150.    Defendant Kennedy Funding's, Kevin Wolfer's and Gregg Wolfer's afore-described conduct constituted the use or employment of unconscionable commercial practices, fraud, false promise, misrepresentation, and the knowing concealment, suppression, and omission of a material fact with the intent that plaintiff rely thereon, all in violation of N.J.S.A. § 56:8-2.

151.    By reason of the foregoing, plaintiff suffered and sustained damages in the amount of $615,000.00, consisting of $500,000.00 paid to defendant Kennedy Funding as a Commitment Fee, the sum of $15,000.00 paid to defendant Kennedy Funding as a Letter of Interest Fee, the sum of $15,000.00 paid to defendant Kennedy Funding as legal fees and costs, and $85,000.00 paid to defendant Kennedy Funding as appraisal fees.

WHEREFORE, plaintiff prays for judgment against each of defendants Kennedy Funding Financial LLC, Kevin Wolfer, and Gregg Wolfer, in the amount of $615,000.00, together with pre-judgment interest thereon, treble damages, attorney's fees and costs of suit as allowed and provided for by the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

Dated: New York, New York
      December 2, 2020

Yours, Etc.

MASSOUD & PASHKOFF, LLP
Attorneys for Plaintiff

By: _____
Ahmed A. Massoud, Esq.
AAM:5361