**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF                                          MARTIN LUTHER KING COURTHOUSE
MADELINE COX ARLEO                                   50 WALNUT ST. ROOM 4066
UNITED STATES DISTRICT JUDGE                         NEWARK, NJ 07101
                                                     973-297-4903

April 26, 2023

VIA ECF

**LETTER ORDER**

   Re: **Quimera Holding Group, SAC v. Kennedy Funding Financial, LLC, et al.**
      **Civil Action No. 20-17764**

Dear Litigants:

  **THIS MATTER** comes before the Court by way of Plaintiff Quimera Holding Group, S.A.C.'s ("Quimera" or "Plaintiff") and Defendants' Kennedy Funding Financial, LLC, ("Kennedy Funding"), Kevin Wolfer, and Gregg Wolfer, (collectively "Defendants") Cross-Motions for Partial Summary Judgment, and Summary Judgment, respectively, under Federal Rule of Civil Procedure 56(c). Plaintiff and Defendants oppose each other's Motions. For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment on Plaintiff's Breach of Contract claim is **GRANTED,** the remaining claims are dismissed, and Defendants' Motion for Summary Judgment is **DISMISSED AS MOOT.**[1]

  **I.  BACKGROUND**[2]

---

[1] At oral argument held before this Court on April 10, 2023, (the "April Oral Argument") the Court raised the need for supplemental briefing on some the remaining claims, particularly the applicability of the economic loss doctrine, which was not briefed by the parties. See Apr. Or. Arg. Tr. at 5. Plaintiff's counsel advised that it would dismiss all remaining claims if Quimera prevailed on its breach of contract claim, obviating the need for the Court to reach those issues after supplemental briefing. Id. at 9. Accordingly, considering the Court's grant of Summary Judgment against Kennedy Funding on Count III (the Breach of Contract claim), Counts I, II, and V and VI are dismissed.

[2] Unless otherwise indicated, the Court draws the following facts from Plaintiff's Statement of Material Facts, ECF No. 28-17 ("Pl. SOMF"), Defendants' Statement of Material Facts, ECF No. 26-2 ("Def. SOMF") and the parties' responses to those submissions, ECF Nos. 29-10, 30-1. The Court will not consider the statements made in Defendants' Statement of Material Facts and Counterstatement of Material Facts that are unsupported, conclusory allegations. See Fed. R. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); see also Celotex Corp., 477 U.S. at 324 (A non-moving party must go "beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, [and] designate specific facts showing that there is a genuine issue for trial" to survive a motion for summary judgment). The Court notes any disputes.

1

This matter arises from a dispute over whether Plaintiff is entitled to $585,000 in damages for the breach of a loan agreement. See generally Compl., ECF No. 1. On July 6, 2017, Plaintiff engaged the services of South Pacific Funds and Commerce Limited ("South Pacific"), to identify and procure sources of loan financing for Plaintiff's real estate development in Peru. Pl. SOMF ¶ 1. South Pacific identified Kennedy Funding as a potential source of financing. Id. ¶¶ 2-3. On November 1, 2017, Quimera met with Kennedy Funding at its New Jersey office to review and finalize the terms upon which Defendant could provide Plaintiff with financing for its upcoming real estate project (the "November Meeting"). Id. ¶ 5. At the November Meeting, Kennedy Funding presented Quimera with a Letter of Interest that explained the general terms upon which it could provide Quimera with financing. Id.; Cordova Decl., Ex. A, ECF No. 28-2 (the "LOI"). Under the terms of the LOI, in exchange for Kennedy Funding to prepare a comprehensive loan offer, Plaintiff paid a non-refundable $15,000 by check to Kennedy Funding on November 1, 2017. Pl. SOMF ¶ 6; see LOI at 2.

Upon receipt of the $15,000 deposit, Kennedy Funding presented Quimera with an agreement setting forth the specific terms upon which Kennedy Funding would provide Quimera with financing, which the parties executed on November 1, 2017. See Cordova Decl., Ex. B, ECF No. 28-3 (the "Loan Commitment"). Pursuant to the terms of the Loan Commitment, Kennedy Funding agreed to provide Quimera with financing in a maximum amount of $50 million and a minimum amount of $3 million. See Loan Commitment at 2-4. The amount of the loan would be calculated based on the "as is" market value of real estate collateral. Id. at 4. Under the Loan Commitment, once an appraiser decided the "as is" market value of the collateral, Kennedy Funding would make a loan offer equal to 55% of the "as is" market value of the collateral, not to exceed $50 million. Id. at 2-4.

The Loan Commitment further specified that if Quimera disputed the appraised value of the collateral, it could reject Kennedy Funding's loan offer and elect to engage the services of a third-party appraiser to be mutually agreed upon. Id. at 4. To proceed with the loan, Quimera would need to pay Kennedy Funding a non-refundable fee of $2,485,000 (the "Commitment Fee"). Id. The Loan Commitment states that "[i]f [Kennedy Funding] is unable to perform its obligation under the terms of this Loan Commitment . . . [Kennedy Funding] shall only be obligated to refund the paid portion of the Commitment Fee . . . There will be no refund if [Quimera] has not complied with all the conditions of the Loan Commitment." Loan Commitment at 5. The Loan Commitment further provided that the term of the loan would be three years from the date of closing, and the closing would take place not later than February 15, 2018, with time of the essence. See id. at 2. If Quimera required additional time to close, Kennedy Funding could extend the expiration date of the Loan Commitment until March 15, 2018, for $500,000. Id.

Although the Loan Commitment states that the "Lender shall receive a first Lien on the Real Estate Collateral as described in Schedule C[,]" at the time the contract was executed, Schedule C was left blank. See ECF No. 30-1, p. 110, ("Schedule C"), see also Apr. Or. Arg. Tr. at 21-22. However, after the Loan Commitment was executed, the parties considered and proposed different properties to serve as collateral. Cordova Decl. ¶ 21. At the November Meeting, Quimera provided Kennedy Funding with an extensive list of properties to serve as proposed collateral. Id. In response, Kennedy Funding requested that Quimera designate those properties it wished to serve as collateral. Id. ¶ 22. By e-mail to Kennedy Funding dated November 12, 2017, Quimera designated eight properties it wished to serve as collateral for the loan. Id. ¶ 23. However, those

2

eight properties were the not the collateral that Kennedy Funding eventually had appraised.  See also Cordova Decl., ECF No. 29-2 ¶¶ 17-19.

By December 27, 2017, Quimera paid Kennedy Funding $500,000 towards the Commitment Fee, as well as an $85,000 appraisal fee, which Kennedy Funding accepted.  Pl. SOMF ¶¶ 18-21.

Kennedy Funding thereafter designated C.B. Richard Ellis Chile ("CBRE") to perform the appraisal of the nine properties Kennedy Funding selected.  Cordova Decl. ¶ 33.  CBRE appraised properties from the original list that the parties discussed at the November Meeting, and not the eight that Quimera had proposed.  After it received CBRE's appraisal, which collectively amounted to $59,206,161, Kennedy Funding provided Quimera with a loan offer in the amount of $32,600,000 to be secured by the properties Kennedy Funding selected.  Pl. SOMF ¶¶ 23-24, see Cordova Decl., Exs. I-M.  CBRE provided separate reports for each property.  See Cordova Decl., ¶¶ 35-39.  Upon review of the appraisal reports, Quimera disputed many of CBRE's valuation methods.  Pl. SOMF ¶ 26.

Once Quimera alerted Kennedy Funding that it objected to the valuation methods used, Kennedy Funding sent an e-mail to Quimera on February 2, 2018, stating that it may: (1) engage the services of a third-party appraiser pursuant to the Loan Commitment, or (2) remove certain properties from the list of Alternate Properties and allow Kennedy Funding to adjust its loan offer accordingly.  See Cordova Decl. ¶ 40.  Quimera elected to remove five of the separately appraised properties to avoid payment of the additional $500,000 extension fee, and so that the loan could close immediately.  Id. ¶ 41.

CBRE calculated the value of the remaining properties at $46,268,477, yet Kennedy Funding informed Quimera that it would only extend a $23 million loan.  Id. ¶¶ 41-50.  Under the Loan Commitment, 55% of the value should have resulted in a loan of $25,447,662, not $23 million.  Id. ¶ 50.  When Quimera confronted Kennedy Funding about this apparent discrepancy Kennedy Funding noted that "given the fact that we . . . permit[ted] you to choose the 5 properties to include as Collateral and given the fact that 4 of the 5 properties comprising the proposed revised Collateral . . . are just land, we will only offer $23,000,000."  Id. ¶ 53.  Quimera asserts that this was the first time Kennedy Funding disclosed its intention to apply this "additional discount" to the value of the proposed collateral.  See Cordova Decl. ¶ 40, ECF No. 29-2.  As such, Quimera refused to close on the loan, claiming breach.  Id. ¶ 48.   Kennedy Funding in turn declined to return any part of the fees paid to it by Quimera.  Pl.  SOMF ¶ 39.

Plaintiff filed a six-count Complaint on December 20, 2020.  The Complaint alleged: (1) fraud,; (2) negligent misrepresentation,  (3) breach of contract, (4) unjust enrichment,[3] (5) breach of the covenant of good faith and fair dealing, (6) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 58:8-1.  These motions followed.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), the Court should grant summary judgment when there is no genuine issue as to any material fact "that would permit a reasonable jury to find for the nonmoving party," Boyle v. Cty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted), and "the moving party is entitled to judgment as a matter of law." Celotex Corp.

---

[3] Plaintiff withdrew its unjust enrichment claim.  See Pl. Opp. Br. at 20

v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the Court does not "weigh the evidence to determine the truth of the matter," but rather assesses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986).  The Court construes all facts and inferences in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

The summary judgment standard does not change when the parties file cross-motions for summary judgment.  Appelmans v. City of Phila., 826 F.2d 214,216 (3d. Cir.1987).  "Cross-motions for summary judgment are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."  Transportes Ferreos De Venez. II Ca v. NKK Corp., 239 F.3d 555,560 (3d. Cir. 2001).

### III.    Analysis

#### a.  Breach of Contract Claim (Count III)

Both Plaintiff and Defendants argue they are entitled to summary judgment on the breach of contract claim.  Specifically, Plaintiff argues that Defendant breached its obligations under the Loan Commitment because it did not provide a loan offer equal to 55% of the "as is" market value of the proposed collateral.  Pl. Mem. at 10.  Defendants argue that Kennedy Funding complied "with every applicable provision" of the Loan Commitment and there was no breach.  Def. Mem. at 10.  The Court agrees with Plaintiff.

The elements of a breach of contract claim under New Jersey law are that: (1) a contract existed between the parties; (2) the defendant breached a duty imposed by the contract, (3) the plaintiff performed its obligations under the contract, and (4) plaintiff was damaged as a result. Argust v. LPL Fin., LLC, 759 Fed. Appx. 121, 125 (3d Cir. 2018).  Here, there is no dispute that the parties entered into an enforceable contract, namely the Loan Commitment.  At issue is whether Plaintiff performed and Defendant breached the Loan Commitment.

"[D]isputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment."  Tamarind Resort Assocs. v. Gov't of Virgin Islands, 138 F.3d 107, 110 (3d Cir. 1998) (internal quotation marks and citation omitted).  Here, as noted, the Valuation Reports prepared by CBRE conclusively established the disposition value of the five properties designated by Plaintiff as collateral was $46,268,477.  Pl. SOMF ¶ 31, see generally, Valuation Reports.  As a result, Plaintiff argues that 55% of the Designated Collateral should have been $25,447,662, and a loan should have been offered in that amount.  Defendant argues that once Plaintiff removed five of the properties from the list that CBRE appraised, it effectively rejected the Loan Commitment and therefore Defendants was not in breach.  The Court is not persuaded.

The argument that the Loan Commitment was limited to funding for the package of properties that Kennedy Funding chose is not supported by the Loan Commitment.  Under the terms of the Loan Commitment, Kennedy Funding was required to "either offer a Loan . . . of 55% of the 'as is' market value of the collateral as determined by [an] appraiser . . . or return the paid portion of the Commitment Fee."  Loan Commitment at 4.   There are no contractual terms

addressing or limiting the types of properties to be selected.  Schedule C is left blank.  Initially, after the contract was executed in November 2017, Defendant requested that Plaintiff select the properties it wanted appraised, and Plaintiff did so by choosing eight.  Pl. SOMF ¶ 18.  Defendant then chose to appraise a different group of properties owned by Plaintiff, and the Valuation Reports reflected a separate value for each of those properties Kennedy Funding selected.  Id. ¶¶ 22-23, see also Valuation Reports.  Nothing in the Loan Commitment states that the removal of certain properties was not permitted under the contract.  Stated differently, Plaintiff did not fail to perform by seeking a loan commitment based only on five of the properties contained in the Valuation Reports.

Defendant argues that after Plaintiff rejected its original loan offer, it made a "counteroffer" for a   new loan based on new terms for those five properties in the amount of $23 million.  Def. Mem. at 11.  However, a plain reading of the February e-mail makes clear that there was no rejection.  Rather, Plaintiff was not demanding new terms, but attempting to perform in accordance with the Loan Commitment.  A counteroffer "implies that the offeree will not consent to the terms of the original offer and will only enter into the transaction on the terms stated in the counteroffer." Berberian v. Lynn, 355 N.J. Super. 210, 217 (App. Div. 2002) (citing Fish v. Schultz, 5 N.J. Super. 403, 405 (App. Div. 1949)).  Here, the February e-mail cannot reasonably be construed as a rejection of the Loan Commitment and an offer to perform only on new terms.  In fact, it suggests just the opposite.  Thus, the undisputed material facts confirm that Plaintiff performed, and Defendant was breach by not offering a loan in accordance with the agreed to contractual terms.

As to damages, The Loan Commitment limits recovery to a "refund the paid portion of the Commitment Fee."  Loan Commitment at 5.  Here, Plaintiffs seek return of the $585,000 they paid under the Loan Commitment for breach of contract.  Apr. Or. Arg. Tr. at 7.  The Court finds an award of contractual damage in that amount is appropriate.  The unambiguous terms of the Loan Commitment and the undisputed facts make clear that (1) Quimera performed its obligations under the Loan Commitment, (2) Defendant breached its duty under the Loan Commitment, and (3) Plaintiff was damaged as a result of Kennedy Funding's breach in the amount of $585,000.  As such, Plaintiffs motion for partial summary judgment on Count III is granted, and Defendants' Motion for Summary Judgment on Count III is denied

### IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment, ECF No. 28, is **GRANTED,** the remaining claims are dismissed, and Defendants' Motion for Summary Judgment, ECF No. 26, is **DISMISSED as MOOT**.  This case is **DISMISSED.**

SO ORDERED.
*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**